1   Edward L. Kreisberg (SBN: 179528)
    eddie@meyersnave.com
2   MEYERS, NAVE, RIBACK, SILVER & WILSON
    555 12th Street, Suite 1500
3   Oakland, California 94607
    Telephone: (510) 808-2000
4   Facsimile: (510) 444-1108

5   Attorneys for Defendant
    CITY OF SANTA CLARA
6

7   Dieter C. Dammeier (SBN 188759)
    DammeierLaw@gmail.com
8   DAMMEIER LAW FIRM
    9431 Haven Avenue, Suite 232
9   Rancho Cucamonga, CA 91730
    Telephone: (909) 240-9525
10

11  Attorneys for Plaintiffs

12

13                    **UNITED STATES DISTRICT COURT**

14          **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

15

16  CHRISTOPHER GAFFNEY, ANDRE               Case No. 4:18-cv-06500-JST
    JEROME SOTO, JOHN C. O'LEARY,
17  GUIDO QUARTAROLI and JEFF                **NOTICE OF MOTION AND JOINT**
    PROVANCHER, on behalf of themselves and  **MOTION TO APPROVE FLSA**
18  all similarly situated individuals,       **SETTLEMENT**

19              Plaintiffs,                   Filed Concurrently with DECLARATION OF
                                              DIETER DAMMEIER IN SUPPORT OF
20          v.                                MOTION; DECLARATION OF EDWARD L.
                                              KREISBERG IN SUPPORT OF MOTION;
21  CITY OF SANTA CLARA,                      AND [PROPOSED] ORDER FOR
                                              APPROVAL OF FLSA SETTLEMENT
22              Defendant.                    AGREEMENT AND DISMISSAL WITH
                                              PREJUDICE
23
                                              Date:     December 12, 2019
24                                            Time:     2:00 p.m.
                                              Place:    Courtroom 6
25
                                              Trial Date:    None Set
26

27

28

# TABLE OF CONTENTS

Page

I.  BACKGROUND ........................................................................................................2

    A.  The Parties and Claims ...................................................................................2

    B.  Procedural History ..........................................................................................3

    C.  Overview of Settlement Agreement ...............................................................6

        1.  Named Plaintiffs ................................................................................7

        2.  Putative Plaintiffs with Prior Releases .............................................8

        3.  Putative Plaintiffs without Prior Releases ........................................9

        4.  Fire Academy Trainees Unpaid Overtime ......................................10

II. REQUEST FOR APPROVAL OF SETTLEMENT ..............................................11

    A.  The Court has Authority to Review and Approve FLSA Settlements ....................11

    B.  Standard of Review .......................................................................................12

    C.  There do Exist Bona Fide Disputes Warranting Compromise ................................12

    D.  The Attorney Fees and Costs in the Settlement are Reasonable ...........................13

        1.  The Court has Discretion to Choose Method .................................13

        2.  The Parties Seek the Common Fund Approach ..............................14

        3.  Common Fund Approach .................................................................15

        4.  Lodestar Method .............................................................................15

    E.  CONCLUSION .............................................................................................17

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4
5

*Barrentine v. Arkansas-Best Freight System, Inc.,*
    450 U.S. 728 (1981) ................................................................................................. 11, 12

6
7

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................... 16

8

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ............................................................................................. 14

9
10

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.,*
    No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ................................. 12

11
12

*Dyer v. Wells Fargo Bank, N.A.,*
    303 F.R.D. 326 (N.D. Cal. 2014) .................................................................................... 7, 8

13

*Flores v. City of San Gabriel,*
    824 F.3d 890 (9th Cir. 2016) ............................................................................................ 2, 3

14
15

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013) ........................................................................................................ 11, 12

16

*Haworth v. Nevada,*
    56 F.3d 1048 (9th Cir. 1995) ............................................................................................. 13

17
18

*Hoffman-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989) .......................................................................................................... 11

19
20

*K.H. v. Secretary of Department of Homeland Security,*
    No. 15-CV-02740-JST, 2018 WL 3585142 (N.D. Cal., July 26, 2018) ............................. 15

21

*Lynn's Food Stores, Inc. v. United States,*
    679 F.2d 1350 (11th Cir. 1982) ......................................................................................... 12

22
23

*Nen Thio v. Genji, LLC,*
    14 F. Supp. 3d 1324 (N.D. Cal. 2014) .............................................................................. 12

24
25

*Otey v. CrowdFlower, Inc.,*
    No. 12-CV-05524-JST, 2014 WL 12643008 (N.D. Cal. Dec. 26, 2014)........................ 12, 14

26

*Otey v. CrowdFlower, Inc.,*
    No. 12-CV-05524-JST, 2014 WL 1477630 (N.D. Cal., Apr. 15, 2014) .............................. 14

27
28

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009)............................................................................................... 7

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2nd Cir. 1999) ............................................................... 14

*Seminiano v. Xyris Enter., Inc.*,
    602 F. App'x 682, 683 (9th Cir. 2015) ............................................... 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir.1990) ............................................................. 15

*Slezak v. City of Palo Alto*,
    No. 16-CV-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) ............................... 12

*Vizcaino v. Microsoft Corp.*,
    290 F. 3d 1043 (9th Cir. 2002) ........................................................... 13

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................................... 16

**Statutes**

29 U.S.C. § 216(b) ........................................................................... 11, 12, 13

Fair Labor Standards Act ...................................................................... 2

FLSA .......................................................................................... *passim*

**Other Authorities**

29 C.F.R. §§ 201-202 .......................................................................... 7

Department of Labor. ECF No. 1 ................................................................ 4

Fed. R. Civ. P. 23(e)(2) ...................................................................... 11

1

**NOTICE OF MOTION AND MOTION**

2       PLEASE TAKE NOTICE that on December 12, 2019 at 2:00 p.m., or soon thereafter as

3 the matter may be heard in Courtroom 6, of the United States District Court for the Northern

4 District of California, located at 1301 Clay Street, Oakland, California, Counsel for the Parties, on

5 behalf of Plaintiffs CHRISTOPHER GAFFNEY, ANDRE JEROME SOTO, JOHN C. O'LEARY,

6 GUIDO QUARTAROLI and JEFF PROVANCHER ("PLAINTIFFS'"), and Defendant CITY OF

7 SANTA CLARA will and hereby do move the Court for an order granting final approval of

8 Settlement Agreement.

9       As discussed in the accompanying Memorandum of Points and Authorities, the parties

10 have reached an agreement which has been approved by all five Plaintiffs. The parties and counsel

11 thus respectfully request that the Court grant the Joint Motion and approve the settlement.

12       This joint motion is based on this Notice, the Memorandum of Points and Authorities

13 submitted herewith, the declarations and exhibits attached hereto, the pleadings, records, and files

14 in this action, and such other written or oral argument as may be presented at or before the time

15 this motion is taken under submission by the Court.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:18-cv-06500-JST
NOTICE OF MOTION AND JOINT MOTION TO APPROVE FLSA SETTLEMENT

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.     BACKGROUND

### A.     The Parties and Claims

Plaintiffs, current or retired City employees, filed a civil complaint (FLSA Collective Action) on October 24, 2018 against Defendant, City of Santa Clara ("Defendant" or "City"), alleging violations of the Fair Labor Standards Act ("FLSA") seeking unpaid wages, liquidated damages, and attorneys' fees and costs based on allegations that the City knowingly failed to compute properly Plaintiffs' regular rate of pay, and thus underpaid Plaintiffs in their overtime rate.

The instant action focuses on alleged violations of the mandates of *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).  In *Flores*, the Ninth Circuit reached the following conclusions: (1) cash-in-lieu of health care benefits must be included in the FLSA "regular rate of pay" (*Flores*, 824 F.3d at 901); and (2) if the cash-in-lieu payments are not only an "incidental" portion of the total amounts contributed by the employer under a flexible benefits plan, the entire amount of the employer's health contributions to a flexible benefits plan on behalf of an employee must be included in the regular rate of pay. *Id.* at 903.  Plaintiffs allege that Defendant maintained a City-wide payroll practice of excluding all cash payments made to City employees in lieu of health benefits, and the City's contributions to employees' medical premiums, from the "regular rate" of pay when calculating FLSA overtime compensation, violating the mandates of *Flores*. Plaintiffs also allege that Defendant improperly failed to include certain other types of specialty and premium pays in the regular rate.

During the course of the litigation and settlement discussions, it was discovered that a subset of potential opt in plaintiffs also had FLSA claims regarding certain unpaid overtime hours and other hours not paid consistent with the FLSA's requirements while working as Fire Recruits during their fire academy training in 2014, 2015 or 2016.  Given the timing, and for the sake of efficiency and a comprehensive FLSA settlement, the parties included the settlement of these claims in the proposed Settlement Agreement.

**B.   Procedural History**

On July 17, 2017, a year after the Ninth Circuit decision in *Flores*, the City entered into a tolling agreement with the City's Firefighter Union with regard to any FLSA action disputing the City's failure to include the *Flores* mandated cash in lieu or medical contributions, as well as other specialty pays, in the FLSA overtime rate.  ECF No. 1 (Complaint) ¶¶ 14-15.  See also Exhibit A to Kreisberg Declaration.  The tolling agreement was executed to allow the City and the Fire Union, aided by its outside FLSA attorney and forensic consultant, the opportunity to reach a settlement with employees represented by the Fire Union and pay them the FLSA amounts allegedly owed for the time period covered by the tolling agreement. Kreisberg Decl. ¶¶ 3-4.  The initial tolling agreement expired October 5, 2017 but was extended several times, ultimately expiring August 5, 2018.  ECF No. 1 (Complaint) ¶¶ 14-15.

During the tolling period, the City worked with the Fire Union and its outside FLSA attorney, Carol Koenig of Wylie, McBride, Platten & Renner toward a settlement of all pending FLSA claims, applicable to the firefighter personnel.  Kreisberg Decl. ¶¶ 4-8.  The City and Fire Union through its attorney and forensic consultant calculated and verified the amounts allegedly owed.  *Id.*  The Santa Clara City Attorney and Fire Union's FLSA attorney then negotiated settlement agreements and releases which were offered to the 155 employees and former employees represented by the Fire Union that had worked for the City between May 2014 and August 2018.  Kreisberg Decl. ¶¶ 4-8 and example of "Settlement Agreement and Release of Claims" attached as Exhibit B to Kreisberg's Declaration.)  August 25, 2018 was the ending date for the FLSA amounts calculated and offered as settlement because the City had by then updated its payroll system to include in the FLSA regular rate the type of pays in dispute (and at issue in this lawsuit).  *Id.*

The assumptions, methodology and calculations for the FLSA amounts offered in settlement and for releases were all reviewed and confirmed as accurate by the Fire Union's

1  attorney and forensic consultant.[1]  *Id.*  Thereafter, two out of the five named Plaintiffs in this

2  lawsuit (Jerome Soto and Jeff Provancher), and 149 out of the other 150 employees represented by

3  the Fire Union during the applicable time period, signed releases developed jointly by the City and

4  Fire Union's attorney.  *Id.*  In exchange for the comprehensive waivers and releases, the City paid

5  these 151 employees and former employees approximately $1.73 million.  *Id.*

6         The $1.73 million paid exceeded the amount actually required under the FLSA (excluding

7  liquidated damages) for the applicable time period for several reasons.  Kreisberg Decl. ¶ 5.  First,

8  the payments included the highest FLSA regular rate applicable to each employee during each

9  calendar year rather than the actual FLSA regular rate applicable to each FLSA work period or

10 workweek.  *Id.*  Second, for the 40-hour per week employees, the City paid the FLSA regular rate

11 on all hours considered overtime at the City (e.g. all hours worked outside the regular schedule),

12 rather than solely on actual hours worked in excess of 40 in a week (i.e. FLSA overtime hours).

13 *Id.*  Finally, as part of the settlement, the City also paid the FLSA regular rate for all compensatory

14 time off cashed out during the applicable time period, even though much of the compensatory time

15 off earned and later cashed out was compensatory time off earned for hours that did not qualify as

16 FLSA overtime hours.  *Id.*

17        The releases signed by the Fire Union employees were not approved by the Court or

18 Department of Labor. ECF No. 1 ¶ 28.  The releases did include the following language intended

19 to ensure the settlement and waivers and release were binding, including a waiver of the right to

20 have the settlement agreement reviewed by the Department of Labor:

21               Whereas, the City has cooperated with Employee in providing
               Employee all documentation employee has requested or Employee
22             deems necessary to a consideration of this Agreement; and

23             . . .

24             3.      In consideration for the benefits described in paragraphs 1
               and 2 above and paragraph 7 below, Employee waives any right or
25             claim of right to additional overtime payments, liquidated damages
               or other damages or expenses of any kind, including attorneys fees,

26

27 ────────────────────

28 [1] The City also paid the cost of both the Fire Union's forensic consultant and the Fire Union's
   attorney's $42,565 of time billed to this matter.  Kreisberg Decl. ¶ 7.

resulting from the alleged failure by City to include mandated amounts in the calculation of the "regular rate of pay" for the First and Second Compensation Periods that s/he might possibly have against City, whether s/he is aware of it or not.  Employee, individually and on behalf of his/her representatives, successors and assigns does hereby completely release and forever discharge City, its current and former Council members, employees, agents, officers and attorneys from all claims, rights, demands, actions, obligations and causes of action, known or unknown, which Employee may not have, or has ever had, against them arising from or in any way connected with the City's alleged failure to include mandated amounts in the calculation of the "regular rate of pay" for the first and Second Compensation Periods. . . .

. . .

6.      . . . .  Employee promises never to file or cause to be filed a lawsuit or grievance to assert any Released Claims. . . .

. . .

8.      Employee acknowledges that the Law Firm of Wylie, McBride, Platten & Renner has reviewed the terms of this Agreement and that City has agreed to reimburse the employees who will receive payment for the First Compensation Period under the terms of this/these Agreement(s) for their attorneys' fees for Employee's claim incurred through September 2018, unless such fees and costs are incurred due to the City's failure to fully comply with the terms of this Agreement.  The Employee and the City both agree that the City shall pay such fees directly to Wylie, McBride, Platten & Renner for all work performed in relation to this Settlement Agreement.  Fees and costs to be reimbursed shall not exceed $60,000 unless such fees and costs are incurred due to the City's failure to fully comply with this Agreement.

9.      Employee further acknowledges his or her right to have this Agreement supervised and approved by the Secretary of the Department of Labor, pursuant to 29 U.S.C. § 216(c).  Employee, after having received advice from his/her recognized employee organization and/or legal counsel, declines to have this Agreement reviewed or approved pursuant to 29 U.S.C. § 216(c).

10.     Both parties acknowledge that they have had the opportunity to be represented by representatives of their choice with respect to the matters which are the subject of this Agreement, that their representatives have discussed this Agreement with them and have fully advised them with respect to the rights and obligations they waive and assume by executing this Agreement, that they voluntarily enter into this Agreement and that said representatives are hereby authorized and directed to take such actions as may be necessary or appropriate to complete this settlement.

Kreisberg Decl. ¶ 8 and Exhibit B to Kreisberg Declaration.

Plaintiffs filed the instant action on October 24, 2018 alleging Defendant failed to include

1   the above-mentioned remuneration in their "regular rate" of pay, thereby resulting in the

2   systematic underpayment of overtime compensation. See ECF No. 1.  On January 2, 2019,

3   Defendant filed their Answer. ECF No. 12.  On March 14, 2019 Plaintiffs filed a Motion to

4   Conditionally Certify an FLSA Collective Action and Facilitate Notice City wide (ECF No. 25)

5   and a Motion to Invalidate Prior Releases. ECF No. 24.  While these motions were pending before

6   the Court, the parties reach a settlement.  A Joint Stipulation for Approval of Settlement was

7   submitted to the Court on May 17, 2019. ECF No. 32.  On May 20, 2019, the Court informed the

8   parties that such request must be filed by way of noticed motion. ECF No. 33. Accordingly, the

9   parties submit this joint motion seeking approval of the settlement reached in this matter.

10          **C.      Overview of Settlement Agreement**

11          Under the terms of the Settlement, Defendant agrees to pay a maximum amount of

12   $2,713,940.26 ("Total Settlement Amount").  See Exhibit A to the Settlement Agreement ¶ 1.A.

13   The Settlement allocates that amount as follows: (1) $111,034.35 for the named Plaintiffs, *Id.* at

14   ¶ 1.B.; (2) $515,867.08 for the Putative Plaintiffs with signed prior releases (and the one Putative

15   Plaintiff that was offered the same settlement terms and release), *Id.* at 1.C.; (3) $1,937,038.83 for

16   the remaining Putative Plaintiffs (all other City employees, none of whom were covered by a

17   tolling agreement or had the option to sign prior releases), *Id.* at 1.D. and E.; and (4) $150,000 for

18   Plaintiffs' counsel's attorneys' fees and costs, *Id.* at 1.F.  In exchange the Plaintiffs will agree to

19   the following release in the Settlement Agreement:

20          **Release of all claims.** PLAINTIFFS accept this settlement, and understand that
            PLAINTIFFS' acceptance of this settlement constitutes a full and complete

21          settlement of all claims relating to the ACTION against the CITY under the FLSA
            and/or the MOU (in regard to overtime pay only) that may exist or have existed as

22          of and including the Effective Date of this Agreement, but which are limited to
            claims made in this lawsuit for unpaid overtime, liquidated damages and attorneys'

23          fees.  Plaintiffs reserve the right to pursue any FLSA or MOU (in regard to
            overtime pay only) claims that they might have for events occurring that were not

24          raised in the ACTION.

25          All Parties to this settlement understand that this Release extends only to all
            grievances, disputes or claims of every nature and kind, known or unknown,

26          suspected or unsuspected, arising from or attributable to PLAINTIFFS' claims
            relating to the ACTION that the City violated the FLSA and/or the MOU up to and

27          including the Effective Date of this Agreement.  The Parties understand that this
            release does not include claims relating to conduct or activity which does not arise

28          from or is not attributable to Plaintiffs' FLSA and/or MOU overtime claims not

claimed in the ACTION or to any conduct or activity which occurs after the Effective Date of this Agreement.  The Parties understand that this is a compromise settlement of disputed claims, and that nothing herein shall be deemed or construed at any time or for any purpose as an admission of the merits of any claim or defense.

The further breakdown of relief provided by the Settlement is as follows:

## 1.    Named Plaintiffs

Pursuant to the Settlement Agreement, the City will pay a sum that equals approximately four years and four months (May 18, 2014 to August 25, 2018) of the alleged shortage in FLSA overtime compensation.  In sum, the named Plaintiffs will receive what they would have received had the City paid the correct FLSA overtime rate since May 18, 2014 to the time the City corrected the alleged miscalculation, August 25, 2018.[2]  In addition, Plaintiffs will be paid an equal amount in liquidated damages, plus a $5,000 service fee for each Plaintiff.[3]

---

[2] As indicated in the Settlement Agreement:

"(1)    To arrive at the alleged shortage owed, the health benefit value, cash in lieu and specialty pays applicable to each individual were converted into an hourly amount that was added to the base hourly rate for each to determine their FLSA regular rate. This amount was multiplied by 1.5 for all FLSA overtime hours worked within each FLSA work period. The City used the highest FLSA regular rate applicable to the employee in each 12 month period (excluding out of class pay, discussed below) even though this higher rate typically only applied for a portion of the 12 month period.  A comparison was made between the FLSA obligation for those hours, and the amount already paid for those hours (i.e. regular straight time pay and MOU overtime pay and "FLSA pay") as well as taking the permissible half time credit under the FLSA regulations for MOU overtime hours that did not constitute FLSA overtime hours. (Pursuant to 29 C.F.R. §§ 201-202).

(2)    For PLAINTIFFS that were paid out of class during the time period covered by this AGREEMENT, the impact of the out of class pay on the FLSA regular rate was calculated for each 24 day FLSA work period and 1.5 times this hourly amount will be paid for all FLSA overtime hours worked in each FLSA work period.

(3)    Also included in the payouts to PLAINTIFFS identified in Exhibit A were alleged shortages for any cash outs of compensatory time from May 5, 2014 to August 25, 2018, with the amount being the difference between the FLSA regular rate as described above and what was actually paid out."

[3] Courts have discretion to award incentive payments to named class representatives. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335

The settlement amount the named Plaintiffs are receiving is more than the amount they could receive at trial.  This is in part because Defendant is paying 100% of liquidated damages on all amounts owed, and assumes Plaintiffs prevail on their argument that the releases signed by two of the five named Plaintiffs was invalid.  Accordingly, the settlement agreement for the five named Plaintiffs is a no brainer.

### 2.    Putative Plaintiffs with Prior Releases

The Putative Plaintiffs are broken into two groups, (i) those who already signed a release with and received settlement payments from the City (149 out of 150 applicable firefighter personnel who are not named Plaintiffs) along with the one non-Plaintiff firefighter who was offered but did not sign a release; and (ii) "the rest of the City's non-exempt employees," i.e. all non-firefighter current and former City employees not exempt from the FLSA that worked for the City between May 2014 and August 2018 and who were not offered an opportunity to sign a release.  For the firefighter employees who already signed releases, they were already paid the underpayment of what they would have received had the City paid the allegedly correct FLSA overtime rate since May 18, 2014 to August 25, 2018 when the City corrected the miscalculation.[4] The Settlement will require the City to pay an additional 20% in liquidated damages (and, for the one firefighter Putative Plaintiff that was offered but did not sign a release, the amount he would have been paid in exchange for the release plus an additional 20% in liquidated damages).  In sum, they will get the same as the named Plaintiffs (back pay for the four years, four months) but will only get 20% in liquidated damages instead of 100%.  This difference is in light of the fact that they already signed releases, were paid and have not sought (or likely expected given their signed releases) to receive anything additional, and did not serve as lead and named Plaintiffs.

---

(N.D. Cal. 2014). An award of $5,000 "is presumptively reasonable." *Id.*

[4] The only exceptions are the impact of out of class pay on FLSA amounts owed, and FLSA pay for twenty six Fire Recruits for limited periods of time worked while attending a Fire Academy in 2014, 2015 and 2016. (See discussion in Section I.C.4 *infra*.)  These amounts are included in the recommended Settlement.

1    If the City prevails on the pending motion over the validity of the signed releases, these

2  Putative Plaintiffs would receive nothing in this case. And, as discussed previously, the

3  methodology used to calculate payments under the Settlement Agreement results in the City

4  actually paying more than the FLSA requires for these Putative Plaintiffs.  Finally, the best

5  possible outcome in litigation for these employees assuming the benefit of the additional months

6  due to the tolling agreement would be to receive liquidated damages from October 2015 until the

7  City corrected the FLSA issues in August 2018 (34 months) but under the Settlement Agreement

8  will be paid 20% liquidated damages on 51 months (May 2014 to August 2018).  These factors

9  along with the inherent risk of litigation make this extra 20% for the 4 years and 4 month period

10 covered under the Settlement Agreement to those who previously signed releases and received

11 payment a fair deal.[5]

12              **3.        Putative Plaintiffs without Prior Releases**

13    The second group of Putative Plaintiffs are the rest of the City employees who were not

14 given the option to sign prior releases.  These are all non-exempt City employees from May 2014

15 to August 2018 that did not work as a Firefighter or other classification represented by the Fire

16 Union.[6]

17    The Settlement calls for these remaining more than 500 current and former  City

18 employees to be paid in the same fashion as the named Plaintiffs and the Putative Plaintiffs who

19 signed releases (full damages back to May 18, 2014), except these employees and former

20 employees will not receive any liquidated damages.  Instead of paying liquidated damages, the

21 City has agreed to go back to the same date in May 2014 as the Firefighter Putative Plaintiffs even

---

[5] As stated *supra*, these Putative Plaintiffs also will be paid an additional amount equal to the impact of their out of class pay earned from May 2014 to August 2018 on their FLSA regular rate applied to their overtime worked, plus an additional 20% liquidated damages on these amounts. The total amount to be paid to the Firefighter Putative Plaintiffs in out of class related back pay is $101,108.43, plus 20% liquidated damages on these amount for the applicable Putative Plaintiffs and 100% liquidated damages on these amounts for the named Plaintiffs.  Kreisberg Decl. ¶ 12.

[6] More specifically, these are all non-FLSA exempt classifications other than Fire Recruit, Firefighter I, Firefighter II, Fire Driver/Engineer, Fire Captain, Fire Captain-Training, Deputy Fire Marshall I and Deputy Fire Marshall II.

though there is no applicable tolling agreement for these employees.  Notably, this recovery period greatly exceeds the period they could recover by bringing their own action since the City corrected the alleged violations in August 2018.

If any of these Putative Plaintiffs filed a new lawsuit, that case would only require the City to pay back three years from filing of a new case.  If such a case was filed in December 2019, the maximum time period at issue would be December 2016 to December 2019.  But, since the City corrected any alleged errors as of August 2018, such a lawsuit would only cover one year and nine months instead of the four years and four months from May 2014 to August 2018 that will be paid under the Settlement Agreement. Put differently, even if a non-Firefighter Putative Plaintiff filed his or her own lawsuit, and was successful on all claims including 100% liquidated damages, he/she would receive less than offered under the terms of this Settlement Agreement.

Of critical import is none of the Putative Plaintiffs, whether they signed or did not sign a prior release, will be bound by the Settlement Agreement if approved by the Court.  Rather, they are free to opt in to the settlement and case and accept the payments set forth in the Agreement, and be bound, or seek their own remedies.

### 4.    Fire Academy Trainees Unpaid Overtime

There are twenty-six employees who worked as City employee Fire Recruits while attending a Fire Academy in 2014 (1 Fire Recruit), 2015 (9 Fire Recruits) and 2016 (15 Fire Recruits).  Kreisberg Decl. ¶ 13.  These Fire Recruits worked a 56 hour per week schedule, 8 hours on Monday, Tuesday, Wednesday and Thursday and 24 hours on Friday.  *Id.*  These employees were paid straight time for all of their regularly scheduled hours.  *Id.*  Recognizing the risk that a Section 207(k) work period of 24 days and 182 hours may not apply to these Fire Recruits, the Settlement Agreement will also pay these Fire Recruits as if a 7 day / 40 hour FLSA workweek applied.  *Id.*

More specifically, the City will pay them an additional half their FLSA regular rate for the sixteen regularly scheduled hours each week that exceeded the FLSA threshold of forty (i.e. 56 hours – 40 hours = 16 hours) if no Section 207(k) work period applied.  *Id.*  The City will also pay them 1.5 times the applicable FLSA regular rate for all hours worked outside their regular

1    schedule.  *Id.*

2         Twenty-five out of the twenty-six Fire Recruits would have been Putative Plaintiffs

3    anyway based on the FLSA overtime they worked after completing their time as Fire Recruits in

4    the Fire Academy.  Kreisberg Decl. ¶ 14.  For them, the settlement amounts to be paid to these

5    twenty-five Putative Plaintiffs for their hours worked as Fire Recruits are simply added to the

6    amounts that would otherwise be paid under the Settlement.  *Id.*  The one Fire Recruit who did not

7    work FLSA overtime after his hours worked as a Fire Recruit will simply receive the FLSA

8    amounts allegedly owed for his hours worked as a Fire Recruit.  *Id.*  The total amount to be paid

9    under the Settlement Agreement to the twenty-six Putative Plaintiffs that worked as Fire Recruits

10   is $229,960.  *Id.*

11   **II.      REQUEST FOR APPROVAL OF SETTLEMENT**

12        **A.      The Court has Authority to Review and Approve FLSA Settlements**

13        The FLSA was enacted for the purpose of protecting workers from substandard wages and

14   oppressive working hours. *Barrentine v. Arkansas-Best Freight System, Inc*., 450 U.S. 728, 739

15   (1981). The statute provides that collective actions against employers may be brought "in any

16   Federal or State court of competent jurisdiction by any one or more employees for and in behalf of

17   himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). These

18   collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate

19   rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

20        "Rule 23 actions are fundamentally different from collective actions under the FLSA."

21   *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (citing Sperling, 493 U.S. at 177-

22   78). While class members in a Rule 23 class action may be bound by a judgment without their

23   consent, members in a collective action must expressly opt in to the collective action by written

24   consent. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he

25   gives his consent in writing to become such a party and such consent is filed in the court in which

26   such action is brought."); see Fed. R. Civ. P. 23. Further, while Rule 23 expressly requires that

27   courts review settlement agreements that bind class members for fairness, reasonableness, and

28   adequacy, there is no such statutory requirement in the FLSA. See Fed. R. Civ. P. 23(e)(2).

1    But under the FLSA, an employee's right to fair payment "cannot be abridged by contract

2 or otherwise waived because this would nullify the purposes of the statute and thwart the

3 legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (internal quotation

4 marks omitted); *see also Genesis Healthcare Corp.*, 569 U.S. at 69 ("The FLSA establishes

5 federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by

6 contract."). Accordingly, courts in this district and this circuit have followed the Eleventh

7 Circuit's holding that FLSA collective action settlements require the supervision of either the

8 Secretary of Labor or the district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

9 1350, 1352-53 (11th Cir. 1982); see also *Seminiano v. Xyris Enter., Inc.,* 602 F. App'x 682, 683

10 (9th Cir. 2015); *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *1

11 (N.D. Cal. June 22, 2017); *Otey v. CrowdFlower, Inc*., No. 12-CV-05524-JST, 2014 WL

12 12643008, at *3 (N.D. Cal. Dec. 26, 2014).

13          **B.     Standard of Review**

14          The Ninth Circuit has not established the criteria that a district court must consider in

15 determining whether a collective action settlement agreement under 29 U.S.C. § 216(b) warrants

16 approval. Most courts evaluate the settlement under the standard established by the Eleventh

17 Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide

18 dispute over FLSA provisions."[7]  *See Lynn's Food Stores*, 679 F.2d at 1355. "If a settlement in an

19 employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in

20 dispute," the district court may "approve the settlement in order to promote the policy of

21 encouraging settlement of litigation." *Id.* at 1354.

22          **C.     There do Exist Bona Fide Disputes Warranting Compromise**

23          As described above, two of the three groups of employees will receive more under the

24 Settlement than if fully successful in litigation.  The one group that does not is the Putative

25

26 _____

27 [7] *See, e.g., Slezak*, 2017 WL 2688224, at *2; *Dunn v. Teachers Ins. & Annuity Ass'n of Am*., No.
   13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey*, 2014 WL 12643008,

28 at *3; *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).

Plaintiffs who previously signed releases, and were paid full damages, without any liquidated damages, pursuant to their prior releases.  There is a motion pending before the Court to invalidate these prior releases.  ECF No. 24. The City will oppose this motion based on its position that the Fire Union's experienced FLSA attorney along with the Fire Union's forensic consultant reviewed, analyzed and confirmed the accuracy of the FLSA calculations that resulted in the settlement payments in exchange for the prior releases; the Fire Union's attorney was integrally involved in drafting and approved as to form the releases signed by these 149 Firefighters; there was no pending litigation at the time of the settlement negotiations and settlement; and the language of the prior settlement agreement and releases contain comprehensive waivers and releases, along with an explicit and knowing waiver of the right to have the Department of Labor review and approve the settlement agreement.

Should the City prevail on this motion, this group of employees would receive nothing as they would be precluded from further litigating their FLSA claims.  As described above, this group of employees are receiving approximately 30% of what they could receive if they prevailed at every turn in this case (in addition to the previous payment of more than 100% of the alleged FLSA back pay).  It is worth emphasizing that these employees signed prior releases and were paid already for the underlying damages.  The additional 20% liquidated damages paid to them for the four years and four month period covered by the Settlement Agreement frankly is an unexpected and an unsought benefit.

**D.      The Attorney Fees and Costs in the Settlement are Reasonable**

**1.      The Court has Discretion to Choose Method**

The FLSA mandates an award of attorneys' fees when settling a collective action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995).

The district court has discretion to choose either the percentage-of-the-fund (common fund) or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft*

1   *Corp.*, 290 F. 3d 1043, 1047 (9th Cir. 2002). "The 'lodestar method' is appropriate in class actions

2   brought under fee-shifting statutes . . . where the relief sought – and obtained – is often primarily

3   injunctive in nature and thus not easily monetized." *In re Bluetooth Headset Prods. Liab. Litig.*,

4   654 F.3d 935, 941 (9th Cir. 2011). "The lodestar figure is calculated by multiplying the number of

5   hours the prevailing party reasonably expended . . . by a reasonable hourly rate for the region and

6   for the experience of the lawyer. Though the lodestar figure is presumptively reasonable, the court

7   may adjust it upward or downward." *Id.* (internal citations and quotation marks omitted). On the

8   other hand, "[w]here a settlement produces a common fund for the benefit of the entire class,"

9   courts may employ either the lodestar or the percentage-of-recovery method. *Id.* at 942. Twenty-

10  five percent of the fund is the benchmark for a reasonable fee award, although this may be

11  adjusted to account for special circumstances. *Id.* The district court also has discretion to utilize

12  both methods to reach a reasonable result. See *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST,

13  2014 WL 1477630, at *8 (N.D. Cal., Apr. 15, 2014).

14              **2.         The Parties Seek the Common Fund Approach**

15              For certainty and efficiency, the parties are requesting the Court use the common fund

16  approach.  Where there is no injunctive relief ". . .and the benefit to the class is therefore easily

17  quantified by reference to a common fund, it is appropriate to use the percentage-of-recovery

18  method to determine the reasonableness of the attorney fee award.  *Otey v. CrowdFlower, Inc*. No.

19  12-CV-05524-JST, 2014 WL 12643008, at *8 (N.D. Cal., Dec. 26, 2014). Use of a common fund

20  approach also "removes disincentives to prompt settlement." *Savoie v. Merchants Bank*, 166 F.3d

21  456, 461 (2nd Cir. 1999).

22              Another reason the parties reached a settlement based on a common fund approach is it

23  will be difficult to estimate post settlement work that will arise, involving 500 plus putative

24  plaintiffs that have not yet been involved in the case.  Rather than leaving the case open ended and

25  allowing Plaintiff's counsel to file a fee motion down the road, the parties agreed to an amount

26  certain that reasonably compensates Plaintiff's Counsel.  Although, as explained below, the Court

27  could reasonably utilize either method and still find the $150,000 amount reasonable, the parties

28  respectfully ask the Court to approve the common fund approach or alternatively, a combination

of both the common fund and lodestar methods resulting in a payment to Plaintiffs' Counsel under the Settlement Agreement of $150,000.

### 3.      Common Fund Approach

The Settlement Agreement calls for $150,000 in attorney fees and costs.  Costs amount to approximately $2,508.11, leaving the remaining amount of $147,491.89 for attorney fees.  From a common fund perspective, the fees amount equals 5.44% of the Total Settlement Amount of $2,713,940.21 which is well below the benchmark of twenty-five percent determined by the Ninth Circuit as a reasonable fee. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990).

### 4.      Lodestar Method

Plaintiff's Counsel has expended 215 hours litigating the case. (Dammeier Decl. ¶20.) Below is a summary[8] of the hours.

| Activity | Hours Spent |
|---|---|
| Case Development and Investigation | 23 |
| Drafting of Pleadings | 12 |
| Discovery and Document Review | 68 |
| Drafting and Arguing Motions | 38 |
| Negotiating Settlement | 34 |
| Misc. Client Communications | 15 |
| Misc. Opposing Counsel Communications | 15 |
| Estimated Post Settlement Activity (500 plus putative plaintiffs) | 10 |
| TOTAL | 215 |

[8] In following the Court's guidance, the summary reflects "the hours worked by each individual timekeeper; the hourly rate of each timekeeper; and the time spent on various categories of activities, including case development and investigation, the drafting of pleadings, discovery and document review, the drafting and arguing of motions, and the time spent negotiating the settlement, as well as any other category for which a substantial amount of time was expended. *K.H. v. Secretary of Department of Homeland Security*, No. 15-CV-02740-JST, 2018 WL 3585142, at *6 (N.D. Cal., July 26, 2018).

Attached to Plaintiff's Counsel's Declaration are receipts for the litigation costs of $2,508.11 (Dammeier Decl. ¶ 17, Exhibit A).  Below is a summary of the costs.

| Cost Item | Amount |
|---|---|
| Airfare | $541.33 |
| Ground Transportation | $24.00 |
| Copying | $1,368.25 |
| Court Fees | $400.00 |
| Process Service | $55.00 |
| Postage/Delivery | $119.53 |
| TOTAL | $2,508.11 |

The Settlement Agreement calls for $150,000 in attorney fees and costs.  Costs amount to approximately $2,508.11, leaving the remaining amount of $147,491.89 for attorney fees.  For an attorney of Plaintiff Counsel's experience, the prevailing rates for similar legal work is $650-$700 per hour (Dammeier Dec. ¶ 21 ).  In *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 251 (N.D. Cal. 2015), a California wage and hour case, a court in this district awarded an hourly rate of $650 to a partner with 16 years of experience.  Similarly, in *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011), a court in this district in a FLSA case awarded an hourly rate of $650 to an attorney with 17 years of experience. *Id.* at *19.  Plaintiff Counsel has over twenty-two years of experience, and primarily litigates FLSA cases, including filing the case that propelled the Ninth Circuit decision underlying the instant action. (Dammeier Dec. ¶ 21). Counsel has lectured on the FLSA and personally argued employment cases before both the California and United States Supreme Court. *Id.*  Accordingly, if the Court utilizes the lodestar method in this case, a $700 per hour rate is reasonable and respectfully requested.

Based on either method utilized or a combination thereof, the $150,000 in fees and costs is reasonable.

/ / /

/ / /

/ / /

/ / /

1

### E.     CONCLUSION

2          For the foregoing reasons, Counsel for the parties respectfully request that the Court

3    approve this Joint Motion and the attached Settlement Agreement.

4

5    DATED:  October 17, 2019                    MEYERS, NAVE, RIBACK, SILVER & WILSON

6

7                                                By:  _____/s/ Edward L. Kreisberg_____

8                                                     EDWARD L. KREISBERG
                                                     Attorneys for Defendant
9                                                    CITY OF SANTA CLARA

10

11   DATED:  October 17, 2019                    DAMMEIER LAW FIRM

12

13                                               By:  _____/s/ Dieter C. Dammeir_____

14                                                    DIETER C. DAMMEIER
                                                     Attorney for Plaintiffs
15                                                   CHRISTOPHER GAFFNEY et al.

16

17                                   **ATTESTATION**

18          I hereby attest that I have received concurrence in the filing of this document from Dieter

19   C. Dammeier.

20                                               By:  _____/s/ Edward L. Kreisberg_____
                                                     Edward L. Kreisberg
21

22

23   3405998.1

24

25

26

27

28