UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER GAFFNEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SANTA CLARA, <br><br> Defendant. | Case No. 18-cv-06500-JST <br><br> **ORDER DENYING MOTION TO APPROVE FLSA SETTLEMENT** <br><br> Re: ECF No. 49 |

Before the Court is the parties' joint motion to approve FLSA settlement. ECF No. 49. The Court will deny the motion without prejudice.

## I. BACKGROUND

### A. Factual and Procedural Background

Plaintiffs Christopher Gaffney, Andre Jerome Soto, John C. O'Leary, Guido Quartaroli, and Jeff Provancher are firefighters currently or formerly employed by Defendant City of Santa Clara. On October 24, 2018, they filed a complaint alleging violations of the Fair Labor Standards Act ("FLSA"). ECF No. 1. They brought the case as an FLSA collective action on behalf of themselves and "all other persons similarly situated who work, or have worked, for Defendant at any time since August 24, 2014 and were not paid their complete statutory overtime compensation." *Id.* ¶ 5. Plaintiffs allege that Santa Clara underpaid them for overtime by excluding certain forms of compensation, including "cash in lieu of medical benefits," from the "regular rate" used to calculate their overtime pay in violation of the rule set forth in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016). *Id.* ¶¶ 16-17; ECF No. 49 at 5. Plaintiffs seek unpaid wages, liquidated damages, and attorney's fees and costs. ECF No. 1 ¶¶ 30-32; ECF No. 49 at 5.

1    On July 10, 2017, more than one year prior to the filing of this action, Santa Clara entered
2    into a tolling agreement with the International Association of Firefighters Local 1171 ("the Fire
3    Union") regarding any FLSA action alleging failure to comply with *Flores*.  *See* ECF No. 49 at 6;
4    ECF No. 42 ¶¶ 3-4; ECF No. 42-1.  At the end of the tolling period, which was extended several
5    times but expired on August 5, 2018, 151 Fire Union-represented employees signed settlement
6    agreements with Santa Clara in which they released FLSA claims in exchange for $1.73 million in
7    total back-paid overtime.  ECF No. 49 at 6-7; ECF No. 42 ¶¶ 5-7; ECF No. 42-2 ("Union
8    Release").  Two of the five named Plaintiffs signed these agreements, which were not approved by
9    a court or the Department of Labor.  ECF No. 49 at 7.  By August 25, 2018, Santa Clara had
10   updated its payroll system to correct the alleged error.  *Id.* at 6.

On March 14, 2019, after having filed the instant action, Plaintiffs filed motions to invalidate the prior releases and to conditionally certify a collective action and facilitate notice to opt-in plaintiffs.  ECF Nos. 24, 25.  On May 17, 2019, the parties filed a stipulation for approval of settlement agreement and dismissal with prejudice.  ECF No. 32.  The Court instructed the parties to file a noticed motion for FLSA settlement approval.  ECF No. 33.  The parties filed a joint motion to approve their FLSA settlement on October 17, 2019, ECF No. 40, and amended the motion on December 23, 2019, ECF No. 49.  The Court took the motion under submission without a hearing.  ECF No. 46.

### B.    Overview of the Settlement Agreement

Under the Settlement Agreement, Santa Clara agrees to pay a total settlement amount of $2,965,212.90.  ECF No. 49-1 at 3.  The Settlement allocates this amount among three groups of plaintiffs: (1) the named Plaintiffs; (2) putative firefighter Plaintiffs; (3) putative non-firefighter Plaintiffs.  *Id.* at 4-5.  It also includes $175,000 in attorney's fees and costs.  *Id.* at 7; ECF No. 49 at 9.

The named Plaintiffs will receive a total of $111,034.35, allocated among them based upon the number of FLSA overtime hours they worked between May 18, 2014 and August 25, 2018.[1]

---

[1] The parties do not indicate whether the named Plaintiffs who signed the Union Release and received back-paid overtime in August 2018 will receive additional overtime payment.  Any future

2

*Id.* at 4. This number includes liquidated damages of an amount identical to the unpaid overtime, *see* 29 U.S.C. § 216(b), and a $5,000 "Class Representative Service Fee" for each named Plaintiff. ECF No. 49-1 at 4.

The first group of putative Plaintiffs are those who occupied the classifications of Fire Recruit, Firefighter I, Firefighter II, Fire Driver/Engineer, Fire Captain, Fire Captain – Training, Deputy Fire Marshall I and/or Deputy Fire Marshall II during the applicable time period. *Id.* Of these Plaintiffs, 149 signed the Union Release and received settlement payments from Santa Clara, and one was offered the same settlement but did not sign the release. ECF No. 49 at 11. Because these Plaintiffs have already received their unpaid overtime, they will receive only liquidated damages under the terms of the Settlement (except for the one putative firefighter Plaintiff who did not sign the release, who will also receive unpaid overtime). *Id.* Whereas the named Plaintiffs will receive liquidated damages equivalent to 100 percent of their unpaid overtime, the putative firefighter Plaintiffs will receive just 20 percent of their unpaid overtime. *Id.* This amount will total $684,689.51. ECF No. 49-1 at 4.

Twenty-six of the putative firefighter Plaintiffs will also receive additional FLSA overtime for claims that surfaced during settlement negotiations regarding how their workweeks were calculated. ECF No. 49 at 5, 14. These putative Plaintiffs will receive an additional total of $229,960. ECF No. 49-1 at 5.

The second group of putative Plaintiffs are non-exempt workers employed by Santa Clara between May 18, 2014 and August 25, 2018 who were not represented by the Fire Union and thus were not parties to the earlier settlement. ECF No. 49 at 12. These Plaintiffs number more than 500. *Id.* Under the Settlement, they will receive any overtime owed to them during this period, but most of them will not receive liquidated damages. *Id.* Putative Plaintiffs who were employed as public safety police officers, police sergeants, and police lieutenants, however, will also receive 20 percent of their unpaid overtime in liquidated damages. *Id.*; ECF No. 49-1 at 5. The putative police Plaintiffs will receive a total of $344,701.28, while the rest of these putative Plaintiffs will

settlement should clarify this point.

3

receive a total of $1,649,787.76.  ECF No. 49-1 at 5.

In exchange, the Plaintiffs agree to release all claims related to the action arising under the FLSA or the overtime portions of the union memorandum of understanding ("MOU").  ECF No. 49 at 9-10; ECF No. 49-1 at 8.  The Settlement Amount also includes $175,000 in attorney's fees and costs.  *Id.* at 6.

Within 20 days of an order approving the Settlement, Santa Clara agrees to mail notice to the last known address of all putative Plaintiffs.  ECF No. 49-1 at 11, 60-61.  For a putative Plaintiff to opt into the Settlement, her claim form and release must be received by Santa Clara within 30 days of the date the notice was mailed.  *Id.*  The City agrees to issue payment to all putative Plaintiffs who successfully opt into the Settlement within 60 days of the date the notice was mailed.  *Id.*  The Settlement does not indicate what will happen to any funds that go unclaimed by Plaintiffs who do not opt in.

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.  LEGAL STANDARD

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours.  *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  An employee's right to fair payment "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."  *Id.* at 740 (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).  Accordingly, FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  The FLSA also provides for an award of reasonable fees.  *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval.  Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members

within the meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated"). If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## IV.   DISCUSSION

### A.   Conditional Certification

Section 216(b) of the FLSA allows an employee to bring a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). "Under [the] FLSA, a potential plaintiff does not benefit from (and is not bound by) a judgment unless he or she affirmatively opts in to the lawsuit. This rule is in contrast to a typical Rule 23 class action, where a potential plaintiff must opt out to be excluded from the class." *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 528 (9th Cir. 2013), *rev'd on other grounds by Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014) (internal citations and quotation marks omitted). Certification requires a showing that the putative collective action members are "similarly situated." *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (citing 29 U.S.C. § 216(b)). The question of whether a putative collective action is suitable for certification is within the discretion of the district court. *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010).

Neither the FLSA nor the Ninth Circuit has defined "similarly situated" for the purpose of determining whether a collective action is suitable for certification. *Lewis*, 669 F. Supp. 2d at 1127. Most courts in this circuit follow a two-stage process for determining whether putative collective action members are similarly situated. *Id.*

In the first stage, which is referred to as the "notice stage," the Court considers whether the plaintiff has submitted sufficient evidence to justify conditional certification of the collective action and the sending of notice of the action to potential class members. *Id.* Certification at this

5

stage requires "little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (citation and internal quotation marks omitted). *Id.* "The standard for certification at this stage is a lenient one that typically results in certification." *Id.*

In the second stage, the Court reevaluates the collective action under a stricter standard after discovery is completed and usually on a motion for decertification by the defendant. *Id.* At this point, the Court considers several factors, including "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Id.* When certifying an FLSA collective for the purpose of settlement, courts use the more lenient conditional standard. *See, e.g.*, *Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 1589980, at *7 (N.D. Cal. Apr. 12, 2019); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1341 (N.D. Cal. 2014); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013).

The Court is not in a position to evaluate whether conditional certification is proper here because the parties have not briefed the issue. While Plaintiffs' complaint does make "substantial allegations . . . that the putative class members were together the victims of a single decision, policy, or plan" to exclude cash in lieu of medical benefits from their overtime rate, *Lewis*, 669 F. Supp. 2d at 1127 (citation and internal quotation marks omitted), it does not support these allegations with "declarations or discovery," *id.*; *see Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2013 WL 4552493, at *3 (N.D. Cal. Aug. 27, 2013) ("Plaintiffs have met their burden to show that conditional certification is appropriate by presenting substantial allegations and discovery showing that the putative class members had similar job duties and were subject to the same policies."). Plaintiffs should include such support in any renewed motion for approval.

**B.    Bona Fide Dispute**

The purpose of the bona fide dispute requirement "is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL

6

2688224, at *2 (N.D. Cal. 2017) (citing *Lynn's Food Stores*, 679 F.2d at 1353 n.8). Accordingly, "[a] bona fide dispute exists when there are legitimate questions about the existence and extent of [the d]efendant's FLSA liability." *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017) (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (internal quotation marks omitted)).

Here, there is an active dispute as to the validity of the Union Releases signed by certain named and putative Plaintiffs. *See, e.g.*, ECF No. 24 (Motion to Invalidate Releases). Because an order holding that the releases are valid would bar further recovery by these Plaintiffs, the Court finds a bona fide dispute as to these Plaintiffs. While there does not appear to be a dispute over the "existence" of Santa Clara's FLSA liability as to the other Plaintiffs and putative Plaintiffs, a dispute does exist as to the "extent" of this liability. *Gonzalez*, 2017 WL 1374582, at *2. The FLSA has a two-year statute of limitations, or three years for willful violations. 29 U.S.C. § 255(a). The Settlement, however, would award overtime to Plaintiffs for a period extending back more than four years (May 18, 2014 to August 25, 2018). ECF No. 49 at 10, 13. Because this is more than these Plaintiffs could receive at trial, the Court finds a bona fide dispute as to their claims as well. *See Slezak*, 2017 WL 2688224, at *2-3 (finding bona fide dispute over extent of FLSA liability even where parties did not dispute that defendant was liable under *Flores*, 824 F.3d at 895).

The extended recovery timeline means that most Plaintiffs will receive more via the Settlement than they would if fully successful at trial. The only Plaintiffs who would forego a potentially better outcome are those who signed the Union Releases. Given the possibility that these releases would prevent them from any further recovery, however, the Court is satisfied that under this Settlement, no Plaintiff would "waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Slezak*, 2017 WL 2688224, at *2 (citing *Lynn's Food Stores*, 679 F.2d at 1353 n.8).

C.     **Fair and Reasonable Settlement Agreement**

In evaluating a proposed FLSA settlement, a district court must determine whether the settlement reflects "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*,

679 F.2d at 1355. To determine whether a settlement is fair and reasonable, district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### 1. Range of Recovery

The parties contend that the Settlement is fair because, as discussed above, it would provide most Plaintiffs more than they would recover if fully successful at trial. ECF No. 49 at 16. As for the Plaintiffs who have already signed releases and would receive just 20 percent of the liquidated damages the FLSA entitles them to, the parties argue that this amount constitutes "approximately 30% of what they could receive if they prevailed at every turn in this case" and that any additional compensation at this point would be "unexpected and an unsought benefit." *Id.* at 17. While the parties do not explain the reasoning behind this 30 percent figure, they explain that even if the Court invalidated these Plaintiffs' releases, the FLSA and tolling agreement would only entitle them to liquidated damages for a total of 34 months, while the Settlement Agreement extends that window to 51 months. *Id.* at 12.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)) (holding that one-sixth of the potential recovery was a fair and adequate settlement amount). Given the dispute over the Union Releases and the Settlement's extension of the liquidated damages window, the Court finds the recovery amount here – more than 100 percent of the potential recovery for most Plaintiffs, and at least 20 percent of the

8

potential recovery for the others – fair and adequate. *See Flores v. TFI Int'l Inc.*, 12-cv-05790-JST, 2019 WL 1715180, at *9 (N.D. Cal. Apr. 17, 2019) (approving FLSA settlement where class received one-third of amount it could have received at trial).

However, the Court cannot conclude that the Settlement is fair and adequate overall because the parties do not explain what will happen to any unclaimed funds. Without a provision to the contrary, the Court presumes that any funds foregone by Plaintiffs who do not opt into the Settlement will revert to Santa Clara. The Court generally disfavors reversion clauses because they can signal collusion. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-05596-JST, 2017 WL 7243239, at *6 (N.D. Cal. Jan. 23, 2017); *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2014 WL 12643008, at *6 (N.D. Cal. Dec. 26, 2014). Any future settlement should indicate what will happen to unclaimed funds. *See, e.g.*, *Flores*, 2019 WL 1715180, at *4 (allocating unclaimed funds to *cy pres* recipient); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016-JST, 2016 WL 5394016, at *3 (N.D. Cal. Sept. 27, 2016) (allocating unclaimed funds "to the unclaimed property funds of California and the states in which opt-in class members last resided").

The Court also notes concern regarding the discrepancy in liquidated damages the Settlement would pay to named Plaintiffs who had signed the Union Releases (100 percent of their overtime payment) versus putative Plaintiffs who had signed the same releases (20 percent of their overtime payment). Any amended motion for approval should explain why this arrangement does not undermine the adequacy of these two named Plaintiffs. As noted in the Manual for Complex Litigation, in evaluating the fairness of a settlement, "courts have examined whether . . . the named plaintiffs are the only class members to receive monetary relief or are to receive relief that is disproportionately large (differentials are not necessarily improper, but may call for judicial scrutiny)." Manual for Complex Litigation (Fourth) § 21.62 (2004) (footnote omitted); *see also West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS(GGH), 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (noting that named plaintiffs' potential receipt of "roughly six times the

amount they would likely receive as ordinary class members . . . raises the specter that the named plaintiffs have been 'bought out' to circumvent a more costly class action litigation").

The Court has a similar concern regarding putative Plaintiffs who were employed as public safety police officers, police sergeants, and police lieutenants, who will receive 20 percent of their unpaid overtime in liquidated damages, while similarly situated class members will not.  In the Rule 23 context, a court may approve a settlement only after considering whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  "Courts generally are wary of settlement agreements where some class members are treated differently than others." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) (citation omitted); *see also Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *8 (N.D. Cal. Apr. 6, 2012) ("[D]isparate treatment between class members increases the likelihood that the settlement agreement does not meet the Rule 23(e) standard." (citation omitted)).

### 2. Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  "[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (internal citation omitted).  Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (citation and internal quotation marks and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

While "[i]n this district, $5,000 for each class representative is presumptively reasonable," *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015), the parties provide no information about

the factors bearing on the size of a reasonable award, "including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation[,] [and/or] reasonable fears of workplace retaliation," *Staton*, 327 F.3d at 977 (citation and internal quotation marks and alterations omitted).  The parties are instructed to provide this information in any renewed motion for approval so that the Court may evaluate whether the proposed awards are reasonable.

### 3. Notice

The Court identifies two deficiencies with the proposed notice plan: (1) the 30-day opt-in window is too short, and (2) the parties have not shown that a single notice by mail is the best notice practicable under the circumstances.  For initial opt-in periods for FLSA collective actions, "[t]imeframes of sixty to ninety days appear to have become the presumptive standard in this District."  *Sanchez v. Sephora USA, Inc.*, No. 11-03396-SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (collecting cases).  Absent any argument from the parties as to why a shorter window is necessary, the Court finds the 30-day window too brief.

Further, in any renewed motion for preliminary approval, the parties must show that their proposed notice plan, which involves only a single notice sent by U.S. mail, is the best notice practicable under the circumstances.  To make this showing, they must establish that there are no "reasonable options" in addition to sending a single notice by mail "that could [be] pursued to improve the notice process," such as providing notice by email, online message boards, social media, or publication.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1047 (9th Cir. Dec. 11, 2019) (holding that, because the proposed settlement had "reversionary aspects" and certain members of the settlement class may not have been reachable by mail, "something more" than a single notice sent by U.S. mail was required).[2]  Particularly given that the affected class members

---

[2] *Roes, 1-2* involved the "best notice practicable" standard under Rule 23.  *See* Fed. R. Civ. P. 23(c)(2)(B).  However, adequate notice is even more important to ensure fair settlements in the FLSA context, where plaintiffs are required to opt into a settlement to derive any benefit from it. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

11

are Defendant's current or former employees, it seems likely that Defendant could notify most or all of them, effectively and at low cost, by email or other electronic means.

### 4. Attorney's Fees and Costs

The FLSA requires that a settlement agreement include an award of reasonable fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "The 'case law construing what is a reasonable fee applies uniformly' to all federal fee-shifting statutes." *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (internal quotation marks omitted).

The district court has discretion to choose either the percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized . . . ." *In re Bluetooth*, 654 F.3d at 941. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended . . . by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward." *Id.* (internal citations and quotation marks omitted).

On the other hand, "[w]here a settlement produces a common fund for the benefit of the entire class," courts may employ either the lodestar or the percentage-of-recovery method. *Id.* at 942. Twenty-five percent of the fund is the benchmark for a reasonable fee award, although this may be adjusted to account for special circumstances. *Id.* In determining whether to adjust this benchmark, "courts may consider: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) the comparison of the benchmark with counsel's lodestar." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *27 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). Ultimately, the district court must exercise its discretion

to reach a reasonable result. *In re Bluetooth*, 654 F.3d at 941.

The parties base their fee request on the common fund approach, proposing an award of $172,491.89, which amounts to 5.82 percent of the total Settlement Amount. ECF No. 49 at 18. Because payment of unpaid wages is an easily quantifiable form of relief, the Court agrees that the common fund approach is appropriate in this case, though it will cross-check the proposed amount against the lodestar.[3] Plaintiff's counsel reports 220 hours spent litigating the case at a per-hour rate of $700, which would amount to $154,000 total. *Id.* at 19-20. While the requested amount of $172,491.89 is more than the lodestar, the common fund percentage of 5.82 is well below the presumptively reasonable benchmark of 25 percent. Accordingly, the Court approves the requested amount as reasonable.

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986)). To support an expense award, plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category to permit a court to assess whether the expenses are reasonable. *Wren*, 2011 WL 1230826, at *30. Counsel must also provide receipts to support their claimed expenses. *MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643, at *10 (N.D. Cal. May 31, 2016). Plaintiffs request $2,508.11 in costs, which they break down by category and support with one receipt. ECF No. 49-2 ¶ 17; ECF No. 41-1. Plaintiffs should submit receipts for the remaining expenses if they submit a revised motion for approval.

---

[3] The Court notes that, given the confusion about what will happen to unclaimed funds, it is not clear whether the Settlement is structured as a prototypical common fund, i.e., whether changes to counsel's fees would directly impact Plaintiffs' recovery. *Cf. Staton*, 327 F.3d at 970 ("[I]n a common fund case, 'the defendant typically pays a specific sum into the court, in exchange for a release of its liability. The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class.'") (quoting *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994)). But the Court finds it appropriate to "consider[] all payments that Defendants will make [pursuant to the Settlement] as coming out of one constructive common fund." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2014 WL 1477630, at *9 (N.D. Cal. Apr. 15, 2014).

13

**CONCLUSION**

For the foregoing reasons, the Court denies without prejudice the joint motion to approve the FLSA settlement. Any amended settlement and motion for approval should address the deficiencies identified above and be filed within 60 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: April 13, 2020



JON S. TIGAR
United States District Judge