1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    CHRISTOPHER GAFFNEY, et al.,              Case No. 18-cv-06500-JST
                    Plaintiffs,
8
                                              **ORDER GRANTING RENEWED**
9           v.                                **MOTION TO APPROVE FLSA**
                                              **SETTLEMENT**
10   CITY OF SANTA CLARA,                      Re: ECF No. 53
                    Defendant.
11

12

13          Before the Court is the parties' renewed joint motion for approval of their FLSA

14   settlement.  ECF No. 53.  The Court will grant the motion and conditionally certify the collective

15   action.

16   **I.      BACKGROUND**

17           **A.      Factual and Procedural Background**

18          Plaintiffs Christopher Gaffney, Andre Jerome Soto, John C. O'Leary, Guido Quartaroli,

19   and Jeff Provancher are firefighters currently or formerly employed by Defendant City of Santa

20   Clara.  On October 24, 2018, they filed a complaint alleging violations of the Fair Labor Standards

21   Act ("FLSA").  ECF No. 1.  They brought the case as an FLSA collective action on behalf of

22   themselves and "all other persons similarly situated who work, or have worked, for Defendant at

23   any time since August 24, 2014 and were not paid their complete statutory overtime

24   compensation."  *Id.* ¶ 5.  Plaintiffs allege that Santa Clara underpaid them for overtime by

25   excluding certain forms of compensation, including "cash in lieu of medical benefits," from the

26   "regular rate" used to calculate their overtime pay in violation of the rule set forth in *Flores v. City*

27   *of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).  *Id.* ¶¶ 16-17; ECF No. 49 at 5.  Plaintiffs seek

28   unpaid wages, liquidated damages, and attorney's fees and costs.  ECF No. 1 ¶¶ 30-32; ECF No.

United States District Court
Northern District of California

49 at 5.

On July 10, 2017, more than one year prior to the filing of this action, Santa Clara entered into a tolling agreement with the International Association of Firefighters Local 1171 ("the Fire Union") regarding any FLSA action alleging failure to comply with *Flores*. *See* ECF No. 49 at 6; ECF No. 42 ¶¶ 3-4; ECF No. 42-1.  At the end of the tolling period, which was extended several times but expired on August 5, 2018, 151 Fire Union-represented employees signed settlement agreements with Santa Clara in which they released FLSA claims in exchange for $1.73 million in total back-paid overtime.  ECF No. 49 at 6-7; ECF No. 42 ¶¶ 5-7; ECF No. 42-2 ("Union Release").  Two of the five named Plaintiffs signed these agreements, which were not approved by a court or the Department of Labor.  ECF No. 49 at 7.  By August 25, 2018, Santa Clara had updated its payroll system to correct the alleged error.  *Id.* at 6.

On March 14, 2019, after having filed the instant action, Plaintiffs filed motions to invalidate the prior releases and to conditionally certify a collective action and facilitate notice to opt-in plaintiffs.  ECF Nos. 24, 25.  On October 17, 2019, the parties filed a joint motion to approve their FLSA settlement.  ECF No. 40; *see also* ECF No. 49 (amended).  The Court denied the motion without prejudice on April 13, 2020, identifying several omissions and deficiencies. ECF No. 52.  On June 12, 2020, Santa Clara filed a renewed joint motion to approve the FLSA settlement.  ECF No. 53.  The Court took the motion under submission without a hearing.  ECF No. 60.

### B.      Overview of the Settlement Agreement

Under the updated settlement agreement ("Settlement"), Santa Clara agrees to pay a total settlement amount of $3,336,045.84.  ECF No. 53-1 at 3.  The Settlement allocates this amount among three groups of plaintiffs: (1) the named Plaintiffs; (2) putative firefighter Plaintiffs who signed prior releases or had the opportunity to do so; and (3) putative non-firefighter Plaintiffs, split into subgroups of public safety employees and all other City employees, none of whom were covered by the tolling agreement or had the option to sign prior releases.  *Id.* at 3-6; *see also* ECF No. 53 at 10.

The named Plaintiffs will receive a total of $101,909.80, allocated among them based upon

the number of FLSA overtime hours they worked between May 18, 2014 and August 25, 2018. ECF No. 53-1 at 4. This number includes liquidated damages of an amount identical to the unpaid overtime for the three named Plaintiffs who did not previously sign releases (Gaffney, O'Leary, and Quartaroli), and 20 percent for the named Plaintiffs who previously signed releases and received FLSA payments from the City (Soto and Provancher). *Id.* at 4. The number also includes a $5,000 service fee for each named Plaintiff. *Id.*

The first group of putative Plaintiffs are those who occupied the classifications of Fire Recruit, Firefighter I, Firefighter II, Fire Driver/Engineer, Fire Captain, Fire Captain – Training, Deputy Fire Marshall I and/or Deputy Fire Marshall II during the applicable time period. *Id.* at 4-5. Of these Plaintiffs, 149 signed the Union Release and received settlement payments from Santa Clara, and one was offered the same settlement but did not sign the release. ECF No. 53 at 13. Because these Plaintiffs have already received their unpaid overtime, they will receive only liquidated damages under the terms of the Settlement (except for the one putative firefighter Plaintiff who did not sign the release, who will also receive unpaid overtime). *Id* at 13-14. Like the named Plaintiffs who signed releases, the putative firefighter Plaintiffs will receive the equivalent of 20 percent of their unpaid overtime in liquidated damages (and for the one putative firefighter Plaintiff who did not sign a release, "the amount he would have been paid in exchange for the release plus an additional 20% in liquidated damages"). *Id.* This amount will total $684,689.51. ECF No. 53-1 at 4.

Twenty-six of the putative firefighter Plaintiffs will also receive additional FLSA overtime for claims that surfaced during settlement negotiations regarding how their workweeks were calculated. ECF No. 53 at 16-17; ECF No. 53-1 at 5. These putative Plaintiffs will receive an additional total of $229,960. *Id.*

The second group of putative Plaintiffs are non-exempt workers employed by Santa Clara between May 18, 2014 and August 25, 2018, who were not represented by the Fire Union and thus did not have the option of signing the Union Release. ECF No. 53 at 15-16. The Settlement awards these approximately 800 putative Plaintiffs backpay as well as 20 percent in liquidated damages, for a total of $2,324,446.6. *Id.* at 15; ECF No. 53-1 at 5-6. This putative Plaintiff group

1    is broken into public safety and non-public safety subgroups for the purposes of calculating

2    backpay, as these employees are subject to different FLSA work periods.  *See* ECF No. 53 at 15-

3    16.

4         In exchange, Plaintiffs agree to release all claims related to the action arising under the

5    FLSA or the overtime portions of the union memorandum of understanding ("MOU").  ECF No.

6    53 at 10-11; ECF No. 53-1 at 8.  The Settlement also includes $225,000 in attorney's fees and

7    costs.  ECF No. 53-1 at 6.

8         Within 20 days of an order approving the Settlement, Santa Clara agrees to email and mail

9    notice to the last known address of all putative Plaintiffs.  ECF No. 53-1 at 11.  For a putative

10   Plaintiff to opt into the Settlement, her claim form and release must be received by Santa Clara

11   within 75 days of the date the notice was sent.  *Id.*  The City agrees to issue payment to all putative

12   Plaintiffs who successfully opt into the Settlement within 105 days of the date the notice was sent.

13   *Id.*  Any unclaimed or unpaid funds will be paid by Santa Clara to the Employee Rights Advocacy

14   Institute for Law & Policy as a cy pres recipient.  *Id*. at 7.

15   **II.    JURISDICTION**

16        This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

17   **III.   LEGAL STANDARD**

18        The FLSA was enacted for the purpose of protecting workers from substandard wages and

19   oppressive working hours.  *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).

20   An employee's right to fair payment "cannot be abridged by contract or otherwise waived because

21   this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed

22   to effectuate." *Id.* at 740 (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

23   Accordingly, FLSA collective action settlements require the supervision of either the Secretary of

24   Labor or the district court.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53

25   (11th Cir. 1982).  The FLSA also provides for an award of reasonable fees.  *See* 29 U.S.C.

26   § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or

27   plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

28        The Ninth Circuit has not established the criteria that a district court must consider in

United States District Court
Northern District of California

4

determining whether an FLSA settlement warrants approval.  Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated"). If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation."  *Id.* at 1354.

## IV.   DISCUSSION

In its prior order, the Court held that the parties had demonstrated the existence of a bona fide dispute.  *See* ECF No. 52 at 6-7; *Lynn's Food Stores*, 679 F.2d at 1353 n.8.  While the Court found the prior settlement's recovery amount fair and adequate, it noted that the settlement did not indicate what would happen to any unclaimed funds.  ECF No. 52 at 8-9.  The Court also expressed concern regarding a discrepancy in liquidated damages that the settlement would pay to named Plaintiffs who had signed the Union Releases versus putative Plaintiffs who had signed the same releases, as well as between putative Plaintiffs who had been employed as public safety officers versus those who had not.  *Id.* at 9.  For these reasons, the Court could not conclude that the settlement was fair and adequate overall.  *Id.*

The Court also identified two issues with the parties' prior notice plan: an opt-in window that was too short and a failure to demonstrate that single notice by mail was the best notice practicable under the circumstances.  *Id.* at 11.  The Court approved the requested $179,491.89 in attorney's fees as reasonable but instructed Plaintiffs to submit additional receipts to support their claimed expenses.  *Id.* at 13.  Lastly, because the parties had not briefed conditional certification, the Court could not evaluate whether they had submitted sufficient evidence to justify conditional certification of the collective action.  *Id.* at 5-6.

The amended Settlement and renewed motion for approval address these deficiencies.  For

5

1   the following reasons, the Court will grant conditional certification of the collective action and

2   approval of the settlement.

3          **A.**     **Conditional Certification**

4         Section 216(b) of the FLSA allows an employee to bring a collective action on behalf of

5   himself and "other employees similarly situated."  29 U.S.C. § 216(b).  "Under [the] FLSA, a

6   potential plaintiff does not benefit from (and is not bound by) a judgment unless he or she

7   affirmatively opts in to the lawsuit.  This rule is in contrast to a typical Rule 23 class action, where

8   a potential plaintiff must opt out to be excluded from the class."  *Busk v. Integrity Staffing Sols.,*

9   *Inc.*, 713 F.3d 525, 528 (9th Cir. 2013), *rev'd on other grounds by Integrity Staffing Sols., Inc. v.*

10  *Busk*, 574 U.S. 27 (2014) (internal citations and quotation marks omitted).  Certification requires a

11  showing that the putative collective action members are "similarly situated."  *Lewis v. Wells*

12  *Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (citing 29 U.S.C. § 216(b)).  The

13  question of whether a putative collective action is suitable for certification is within the discretion

14  of the district court.  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010).

15        Neither the FLSA nor the Ninth Circuit has defined "similarly situated" for the purpose of

16  determining whether a collective action is suitable for certification.  *Lewis*, 669 F. Supp. 2d at

17  1127.  Most courts in this circuit follow a two-stage process for determining whether putative

18  collective action members are similarly situated.  *Id.*

19        In the first stage, which is referred to as the "notice stage," the Court considers whether the

20  plaintiff has submitted sufficient evidence to justify conditional certification of the collective

21  action and the sending of notice of the action to potential class members.  *Id.*  Certification at this

22  stage requires "little more than substantial allegations, supported by declarations or discovery, that

23  the putative class members were together the victims of a single decision, policy, or plan."  *Id.*

24  (citation and internal quotation marks omitted).  *Id.* "The standard for certification at this stage is a

25  lenient one that typically results in certification."  *Id.*

26        In the second stage, the Court reevaluates the collective action under a stricter standard

27  after discovery is completed and usually on a motion for decertification by the defendant.  *Id.*  At

28  this point, the Court considers several factors, including "the disparate factual and employment

United States District Court
Northern District of California

settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Id.* When certifying an FLSA collective for the purpose of settlement, courts use the more lenient conditional standard. *See, e.g.*, *Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 1589980, at *7 (N.D. Cal. Apr. 12, 2019); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1341 (N.D. Cal. 2014); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013).

Plaintiffs' complaint contains "substantial allegations . . . that the putative class members were together the victims of a single decision, policy or plan" to exclude cash in lieu of medical benefits from their overtime rate. *See Lewis*, 669 F. Supp. 2d at 1127 (citation and internal quotation marks omitted); *see also Russell v. Wells Fargo & Co.*, No. 07-cv-3993-CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008) (holding that plaintiffs must show that there is "some identifiable factual or legal nexus [that] binds together the various claims of the class members"). These allegations are supported through declarations by Plaintiffs Gaffney and Quartaroli, who state that "the City had a city-wide practice of excluding the cash paid in lieu of healthcare (CIL) and the cost of Healthcare Contributions received by all non-exempt employees from their respective regular rates of pay for purposes of determining their overtime compensation due under the FLSA," ECF No. 57 ¶ 5; ECF No. 58 ¶ 5, and that "other City employees were subject to the City's practice of excluding CIL Compensation and Healthcare Contributions from the calculation of their respective regular rates of pay," ECF No. 57 ¶ 8; ECF No. 58 ¶ 8. The allegations are further corroborated through a declaration by Santa Clara's Director of Human Resources, who admits the existence of a city-wide policy: "Prior to the end of August 2018, the City did not include cash paid to City employees under its cafeteria plan that opted out of enrolling in the City's health plan in the FLSA regular rate for any employees . . . . The City also did not include City contributions to employees' health premiums in the FLSA regular rate for any non-exempt employees . . . ." ECF No. 56 ¶ 3.

These "substantial allegations, supported by declarations or discovery," *see Lewis*, 669 F. Supp. 2d at 1127, are sufficient to meet Plaintiffs' burden at the notice stage. *See, e.g.*, *Gilbert v.*

1    *Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *2-3 (N.D. Cal. Feb. 18, 2009) (granting

2    conditional certification based on substantial allegations supported by plaintiffs' declarations and

3    company document indicating that certain employees "were compensated in the same way

4    nationwide"); *Dalchau v. Fastaff, LLC*, No. 17-cv-01584-WHO, 2018 WL 452112, at *2-3 (N.D.

5    Cal. Jan. 17, 2018) (granting conditional certification based on relevant policy statements by the

6    defendant, plaintiffs' declarations, and some "limited discovery"); *Otey v. CrowdFlower, Inc.*, No.

7    12-cv-05524-JST, 2013 WL 4552493, at *3 (N.D. Cal. Aug. 27, 2013) (granting conditional

8    certification based on defendant's written policies, excerpts of its website, and statements by its

9    representatives).  Accordingly, the Court grants conditional certification of the FLSA collective

10   action.

**B.      Fair and Reasonable Settlement Agreement**

11   In evaluating a proposed FLSA settlement, a district court must determine whether the

12   settlement reflects "a fair and reasonable resolution of a bona fide dispute."  *Lynn's Food Stores*,

13   679 F.2d at 1355.  The Court has already held that the dispute here is bona fide.  ECF No. 52 at 6-

14   7.  To determine whether a settlement is fair and reasonable, district courts implicitly or explicitly

15   consider the factors that are used to evaluate Rule 23 class action settlements, which include:

16   

17              the strength of the plaintiffs' case; the risk, expense, complexity, and
                likely duration of further litigation; the risk of maintaining class
18              action status throughout the trial; the amount offered in settlement;
                the extent of discovery completed and the stage of the proceedings;
19              the experience and views of counsel; the presence of a governmental
                participant; and the reaction of the class members to the proposed
20              settlement.

21   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by*

22   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

23   **1.      Range of Recovery**

24   **a.      Unclaimed Funds**

25   The renewed motion and the Settlement indicate that any unclaimed or unpaid amounts

26   under the agreement will not revert to the City but "shall be paid by the City to the Employee

27   Rights Advocacy Institute for Law & Policy ['the Institute'] as a *cy pres* recipient."  ECF No. 53

28   at 17; ECF No 53-1 at 7.  This clarification eliminates the Court's concern about reversion to the

1   City.  *See* ECF No. 52 at 9.

2   　　　The parties bear the burden to show "a driving nexus between the plaintiff class and the *cy*

3   *pres* beneficiaries."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012); *Flores v. TFI Int'l*

4   *Inc.*, No. 12-cv-05790-JST, 2019 WL 1715180, at *8 (N.D. Cal. Apr. 17, 2019).  Plaintiffs point to

5   the Institute's website, which describes the organization's mission as "advocat[ing] for employee

6   rights by advancing equality and justice in the American workplace."  The Employee Rights

7   Advocacy Institute for Law & Policy (last accessed August 20, 2020),

8   http://employeerightsadvocacy.org/about/.  The Institute describes itself as "the related charitable

9   public interest organization of the National Employment Lawyers Association" and states that it

10  "conduct[s] research, develop[s] resources, and educate[s] advocates, judges, the media,

11  policymakers, and the general public to promote employee rights and protect workers' access to

12  the courts."  *Id.*  The Court is satisfied that an award to this *cy pres* recipient, if one results from

13  the Settlement, would be "guided by the objectives of the underlying statute and the interests of

14  the silent class members," and would not benefit a group "too remote from the plaintiff class."  *Six*

15  *(6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990); *see also*

16  *Flores*, 2019 WL 1715180, at *9.

17  　　　　　　　**b.**　　　**Liquidated Damages Discrepancy**

18  　　　The earlier version of the settlement allocated liquidated damages in an amount equivalent

19  to 100 percent of unpaid overtime to named Plaintiffs who had signed releases, while putative

20  Plaintiffs who had signed the same releases would have received only 20 percent in liquidated

21  damages.  *See* ECF No. 52 at 9.  Similarly, putative Plaintiffs who had been employed in public

22  safety roles would have received 20 percent in liquidated damages while other City employees

23  would not have received any liquidated damages.  *Id.* at 10. The Court expressed concern about

24  these discrepancies because "[c]ourts generally are wary of settlement agreements where some

25  class members are treated differently than others."  *Id.* at 10 (quoting *True v. Am. Honda Motor*

26  *Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010)).

27  　　　The revised Settlement eliminates both of these discrepancies.  Named Plaintiffs who

28  signed the Union releases will now, like similarly situated putative Plaintiffs, receive 20 percent in

United States District Court
Northern District of California

9

1    liquidated damages, ECF No. 53-1 at 4, and all putative Plaintiffs who were not represented by the

2    Fire Union (and thus did not sign the Union Release) will receive 20 percent in liquidated

3    damages, regardless of the positions they held, *id.* at 5-6.

4                                **c.    Incentive Awards**

5            "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

6    are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

7    2003). "[Incentive] awards are discretionary and are intended to compensate class representatives

8    for work done on behalf of the class . . . ." *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 958

9    (9th Cir. 2009) (internal citation omitted). Courts evaluate incentive awards individually, "using

10   relevant factors including the actions the plaintiff has taken to protect the interests of the class, the

11   degree to which the class has benefitted from those actions, the amount of time and effort the

12   plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation."

13   *Staton*, 327 F.3d at 977 (citation and internal quotation marks and alterations omitted). Indeed,

14   "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

15   adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164

16   (9th Cir. 2013). "In this district, $5,000 for each class representative is presumptively

17   reasonable." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015).

18           Under the Settlement, each named Plaintiff will be paid a $5,000 service fee. ECF No. 53

19   at 12. Plaintiffs' attorney submits a declaration stating that he has "spent in excess of 20 hours

20   directly with the five named plaintiffs, in various meetings, one day mediation, conference calls,

21   and text and email communications during the course of the case," in addition to providing

22   information to counsel. ECF No. 54 ¶ 6; *see also* ECF No. 57 ¶ 9 (Gaffney declares that his

23   participation included "meeting in person with our attorney to discuss details of the case, attending

24   a mediation session that while unsuccessful, built a foundation for ultimate settlement, engaging in

25   numerous telephone calls, emails and texts with the group to assist in strategy, [and] providing

26   information for motions and settlement."); ECF No. 58 ¶ 9 (Quartaroli declares the same).

27   Gaffney and Quartaroli also state that they were "treated negatively by some at work who felt

28   [they] should not have filed a case against the City" and were told by union leadership that filing a

United States District Court
Northern District of California

1    case "could negatively impact [] contract negotiations with the City."  ECF No. 57 ¶ 10; ECF No.

2    58 ¶ 10.

3            The Court finds that service fees of $5,000 each appropriately compensate the named

4    Plaintiffs for the time and effort they spent in connection with this litigation as well as the risks

5    they took on behalf of their fellow class members.  *See Smith v. Am. Greetings Corp.*, No. 14-cv-

6    02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000 each to named

7    plaintiffs who spent 20-25 hours on the case).

8                            **2.      Notice**

9            The revised notice addresses both of the deficiencies the Court identified in its prior order.

10   First, it extends the opt-in window from 30 to 75 days, which is sufficient.  *See* ECF No. 53-1 at

11   11; *Sanchez v. Sephora USA, Inc*., No. 11-03396-SBA, 2012 WL 2945753, at *6 (N.D. Cal. July

12   18, 2012) (stating that "[t]imeframes of sixty to ninety days appear to have become the

13   presumptive standard in this District" for initial opt-in periods for FLSA collective actions).

14   Second, it provides for notice by mail and email.  *See* ECF No. 53-1 at 11.  Because there is no

15   reason to believe that putative class members are particularly difficult to reach by mail or email,

16   the Court finds that this notice is "'reasonably calculated' to apprise all class members of the

17   settlement"  and thus meets the "best notice practicable" standard under Rule 23.  *See Roes, 1-2 v.*

18   *SFBSC Mgmt., LLC*, 944 F.3d 1035, 1047 (9th Cir. 2019); Fed. R. Civ. P. 23(c)(2)(B).

19                            **3.      Attorney's Fees and Costs**

20           The FLSA requires that a settlement agreement include an award of reasonable fees and

21   costs.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to

22   the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

23   of the action.").  "The 'case law construing what is a reasonable fee applies uniformly' to all

24   federal fee-shifting statutes."  *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (quoting

25   *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (internal quotation marks omitted).

26           The Court previously approved a requested award of $172,491.89 as reasonable.  *See* ECF

27   No. 52 at 13.  It based this conclusion on the fact that this amount was 5.82 percent of the prior

28   total settlement amount, "well below the presumptively reasonable benchmark of 25 percent" of a

common fund.  *Id.*; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  The Court cross-checked this amount against the lodestar and found it reasonable. ECF No. 52 at 13.  The revised Settlement requests an increased amount of $222,491.89 in attorney's fees.  ECF No. 53 at 21.  Plaintiffs do not explain the increase other than including 20 additional hours in their lodestar "to deal with post settlement inquiries from the Putative Plaintiffs in this matter."  *Id.* at 22; ECF No. 54 ¶ 20.  However, the revised Settlement's common fund is $370,832.94 larger than the prior settlement's, based on the fact that the revised Settlement awards liquidated damages to all putative Plaintiffs.  The revised Settlement's requested fee award is 6.7 percent of the common fund.  Because this amount is still well below the Ninth Circuit benchmark and supported by the lodestar, the Court approves this amount as reasonable.  As Plaintiffs have also submitted receipts to support their request for $2,508.11 in costs, *see* ECF No. 54-1; ECF No. 52 at 13, the Court also approves this request.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the joint motion to approve the FLSA settlement and conditionally certifies the collective action.

**IT IS SO ORDERED.**

Dated:  January 28, 2021



JON S. TIGAR
United States District Judge